UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JAMES MCQUILLAN, | ) | CASE NO. |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| TEN BROECK TAMPA, LLC,  D/B/A | ) | |
| NORTH TAMPA BEHAVIORAL HEALTH, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, JAMES MCQUILLAN, an individual (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby sue the Defendant, TEN BROECK TAMPA, LLC d/b/a NORTH TAMPA BEHAVIORAL HEALTH ["TEN BROECK"], a Florida For Profit Corporation (hereinafter "Defendant"), for declaratory and injunctive relief, pursuant to Title III, 42 U.S.C. § 12181-12189 of the Americans with Disabilities Act ("ADA"), 28 C.F.R. Part 36, and Florida Statutes § 394.451, *et seq.*("The Baker Act"), for damages pursuant to Florida Statute § 394.459(10), and alleges:

## INTRODUCTION

1.      On July 26, 1990, Congress enacted the ADA, 42 U.S.C. § 12101 *et seq*. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant has ten (10) or fewer employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. §12182; *see also* 28 C.F.R. § 36.508(a).

1

2.      Congress found, among other things, that:

a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

b. Historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c. Discrimination against disabled individuals persists in such critical areas including employment, housing, public accommodations, transportation, communication, recreation, health services, voting and access to public services and public facilities;

d. Individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, benefits, or other opportunities; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42  U.S.C. § 12101(a)(1-3),(5) and (9).

3.      Congress explicitly stated that the purpose of the ADA was to:

a. Provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

4.        Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R § 36 and its successor the 2010 ADA Accessibility Guidelines[1] (hereinafter referred to as "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for each subsequent violation.[2]

5.        Pursuant to 28 C.F.R. Part 36.401, all newly constructed facilities were required to comply with the Standards For New Construction And Alterations, set forth in Appendix A to 28 C.F.R. Part 36 ("ADAAG"). Pursuant to 28 C.F.R. Part 36.402, all altered facilities were required to comply with the ADAAG to the maximum extent feasible. Pursuant to 28 C.F.R. Part 36.304, all measures taken to comply with barrier removal

---

[1] https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf (last visited October 15, 2019)

[2] Effective April 1, 2014 the civil penalties were increased, based on inflation, from $55,000.00 to $75,000.00 for the first violation and from $110,000.00 to $150,000.00 for subsequent violations. See 28 C.F.R. § 36 and § 85.

requirements of 42 U.S.C. § 12182 must also comply with the ADAAG to the maximum extent feasible. Failure to comply with these requirements constitutes a violation of the ADA.

6.      Under the 28 C.F.R. Part 36.202(a) "A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation."

7.      Under the 28 C.F.R. Part 36.206(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

8.      Under the 28 C.F.R. Part 36.201(a) "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation."

9.     Failure to comply with these requirements constitutes a violation of the ADA.

10.     Florida Statute § 394.459(4)(a), entitled "Quality of Treatment," states:

> (a) Each patient shall receive services, including, for a patient placed under s. 394-4655, those services included in the court order which are suited to his or her needs, and which shall be administered skillfully, safely, and humanely with full respect for the patient's dignity and personal integrity. Each patient shall receive such medical, vocational, social, educational, and rehabilitative service as his or her condition requires in order to live successfully in the community.  In order to achieve this goal, the department is directed to coordinate its mental health programs with all other programs of the department and other state agencies.

11.     The quality of treatment required by Florida Statute § 394.459(4)(a) ensures equal access to and full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations located on the premises of the facility by allowing the disabled individual to receive services and treatment according to his particular needs, as his condition requires.

## JURISDICTION AND VENUE

12.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been vested with federal question jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. See also 28 U.S.C. § 2201 and § 2202 as well as the 2010 ADA Standards.

13.     This court has supplemental jurisdiction over any claims under The Florida Mental Health Act, Florida Statutes § 394.451, *et seq*. (hereinafter the "Baker Act") pursuant to 28 U.S.C. § 1367.

14.     The remedies provided by Fla. Stat. § 760 are not exclusive, and state administrative remedies need not be exhausted in connection with suits brought under the ADA. Filing a lawsuit, even without prior notice to the defendant or state agencies, constitutes a valid legal recourse to redress discrimination that allows the disabled to "fully participate in all aspects of society." 42 U.S.C. § 12101(a)(1-4). Therefore, Plaintiff has exhausted all administrative remedies that are due.[3]

15.     Venue is properly located in the Middle District of Florida because, (1) the Defendant is located in this district, and (2) Defendant conducts business within this judicial district, and or (3) all of the events or omissions giving rise to Plaintiff's claims occurred and are occurring within this district.

## PARTIES

### PLAINTIFF

16.     Plaintiff currently resides in Clearwater, Florida.

17.     Plaintiff was held by Defendant for an involuntary examination by Defendant under the guise of the Florida Mental Health Act of 1971, Florida Statutes § 394.451, *et seq.*, commonly known as the "The Baker Act". Plaintiff thus suffers from what constitutes as a

---

[3] In *Medina-Rodriguez v. Fernandez Bakery, Inc. et al*, Civil No. 16-2578 (FAB) (D.P.R. June 14, 2017), the Court denied defendant's motion to dismiss for, among others, alleged failure to exhaust administrative remedies. The majority of courts across the country addressing the issue have come to the same conclusion that Title III of the ADA does not incorporate the notice requirement of Title II of the Civil Rights Act. *See, e.g., Williams v. Hermanson Family LP*, 1997 WL 33471624, at 3-4; *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) (stating "[a] plaintiff in a private Title III action is not required to provide any notice to any state or local agency as a prerequisite to filing suit"); *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 54 (3d Cir. 2003) (stating "[t]he District Court here adopted the same reasoning [in *Botosan*], and we will do so as well*"); Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062, 1064 (C.D. Cal 2000) (stating "[b]y its express terms, the ADA adopts only Section 2000a-3(a), which says nothing about notice or exhaustion of remedies"); *Guzman v. Denny's Inc.*, 40 F. Supp. 2d 930 (S.D. Ohio 1999) (stating "[t]o hold that the entirety of § 2000a-3 is adopted, is to impermissibly render superfluous the explicit textual reference to §2000a-3(a)"); *Walker v. Asmar Ctr., LLC*, 2011 WL 5822394, at *6 (E.D. Mich. Nov. 15, 2011) (agreeing with *Guzman* and finding plaintiff was not required to exhaust administrative remedies).

"qualified disability" under the Americans with Disabilities Act ("ADA"). Plaintiff is regarded as having a mental impairment pursuant to 42 U.S.C. §12012(1)(C) and in 42 U.S.C. § 3602(h)(3) because he was perceived as having a mental impairment by Defendant for the purpose of forcibly detaining him from March 13 to March 16, 2019 for a mental examination.

18.    Plaintiff has a disability (sleep apnea) per the Americans With Disabilities Act. 42 U.S.C. § 12101 *et seq*. A disability is defined as "physical or mental impairment which substantially limits one or more of the major life activities of the individual." 28 C.F.R. 36.105(a). "Major life activities" include sleeping.  28 C.F.R. 36.105(c)(1). Sleep apnea is a physical impairment which qualifies under the C.F.R. and therefore the ADA as a disability.

19.    Plaintiff thus suffers from what constitutes as a "qualified disability" under the ADA. The Plaintiff's disability is defined in 42 U.S.C. §12012(1) and in 42 U.S.C. § 3602(h).

20.    Because at the time of the Plaintiff's visit to the premises (and prior to instituting this action), Plaintiff had and was regarded as having a "qualified disability" under the ADA, he was therefore entitled to receive services suited to his needs, which were administered skillfully, safely, and humanely with full respect for his dignity and personal integrity, pursuant to Florida Statutes § 394.459(4), (10) and Article I, Section 23 of the Florida Constitution.

21.    Plaintiff personally visited the Premises, but was denied full and equal access and full and equal enjoyment of the facilities, services, goods and amenities within the Premises even though Plaintiff was a "bona fide" patron.

22.     In this context, Plaintiff's "bona fide" patron status results from the dual motivation to both avail herself of the goods and services of Defendant's establishment, and also to verify the Defendant's ADA compliance. "Such dual motivation . . . suffice[s] to make the plaintiff a "bona fide" patron. *Molski v. Price*, 224 F.R.D. 479, 484 (C.D. Cal. 2004); *see also Clark v. McDonald's Corp.*, 213 F.R.D. 198, 202 (D.N.J. 2003); *contra Nat'l Alliance for Accessibility, Inc. v. Rite Aid of N.C., Inc.*, No. 1:10CV932, 2011 U.S. Dist. LEXIS 109609, at *18 (M.D.N.C. Sep. 27, 2011).

23.     Plaintiff has suffered irreparable harm, humiliation, degradation and discrimination in violation of her civil rights through Defendant's policies and practices of discrimination on the basis of his disability or perceived disability.

24.     Between March 13, 2019 and March 16, 2019, and at all times relevant, Plaintiff was denied full and equal access to and full and equal enjoyment of the Premises because he was denied services suited to his needs administered with full respect for his dignity and personal integrity.

25.     Plaintiff was committed on an involuntary basis to Defendant's facility on March 13, 2019, pursuant to the Baker Act.  Plaintiff's Baker Act hearing was scheduled for March 21, 2019. Plaintiff was deemed competent to make his own treatment decisions. Between his involuntary admission date, and his discharge date, Defendant refused to provide and administer necessary equipment (a CPAP machine[4]) in order to treat and manage his chronic disabling condition (sleep apnea), despite notice by, and requests by, Plaintiff and

---

[4] Continuous positive airway pressure is a form of positive airway pressure ventilator, which applies mild air pressure on a continuous basis to keep the airways continuously open in people who are able to breathe spontaneously on their own, but need help keeping the airway open.

Plaintiff's spouse. This failure and refusal to accommodate Plaintiff's disability as required by law prevented him from full and equal enjoyment of the premises on the basis of his disability or perceived disability.

26.    Plaintiff is continuously aware of the violations at Defendant's Premises and is aware that it would be a futile gesture to return to the Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

27.    Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

28.    Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to Defendant's Premises. Plaintiff would like to be able to patronize the Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but are currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measures are taken at the Premises to eliminate the discriminatory conditions and to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

**DEFENDANT**

29.     Defendant, TEN BROCK TAMPA, LLC d/b/a NORTH TAMPA BEHAVIORAL HEALTH ["TEN BROECK"], is a Florida For Profit Corporation, and is authorized to conduct, and is conducting business within the state of Florida.

30.     Defendant's corporate offices are located at 6100 Tower Circle, Suite 1000, Franklin, TN 37067.  Defendant may be served through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

31.     Defendant is the owner and/or tenant of the commercial property located at 20910 FL State Road-56, Wesley Chapel, FL 33543 which has a public street address of 20910 FL State Road-56, Wesley Chapel, FL 33543.

32.     Therein, the Defendant operates a hospital known as North Tampa Behavioral Health (which is also referenced as "Premises," or "subject facility").

33.     The subject facility is a licensed hospital pursuant to Florida Statutes § 395.003(5)(a), and "[a]dherence to patient rights, standards of care, and examination and placement procedures provided under part I of chapter 394 shall be a condition of licensure for hospitals providing voluntary or involuntary medical or psychiatric observation, evaluation, diagnosis, or treatment."

34.     Defendant is a "Facility" as defined by Florida Statutes § 394.455(16).

35.     The subject facility is a hospital which is open to the general public, and therefore is a place of "public accommodation" pursuant to 42 U.S.C. § 12181 *et seq.* and 28 C.F.R. 36.302 *et seq.*

36.     As the owner or operator of the subject facility, Defendant is required to comply with the ADA. To the extent the property, or portions thereof, existed prior to January 26, 1993 ("pre-existing facility"), the owner or operator has been under a continuing obligation to remove architectural barriers at that property whose removal was readily achievable, as required by 42 U.S.C. § 12182. To the extent that the property, or portions thereof, were constructed after January 26, 1993 ("newly constructed facility"), the owner or operator was under an obligation to design and construct such facilities such that they are readily accessible to and usable by individuals with disabilities, as required by 42 U.S.C. § 12183. To the extent that the facility, or portions thereof, were altered in a manner that affects or could affect its usability ("altered facility"), the owner or operator was under an obligation to make such alterations in such a manner that, to the maximum extent feasible, the altered portions are readily accessible to and usable by persons with disabilities.

37.     All conditions precedent to this action have occurred or have been waived.

38.     Plaintiff has retained the services of the undersigned attorneys and is required to pay a reasonable fee for their services.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

Plaintiffs re-allege and incorporate by reference the allegations stated in paragraphs 1-38 herein above.

39.     Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104 and the 2010 ADA Standards, Defendant's Premise is a place of public accommodation covered by the ADA by the fact it provides services to the general public and must be in compliance therewith.

11

40.     Defendant has discriminated, and continues to discriminate against Plaintiff and others who are similarly situated by denying access to and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Premises, as prohibited by 42 U.S.C. § 12182 and 42 U.S.C. § 12101 *et seq*.; and by failing to provide services which were suited to Plaintiff's needs and the needs of disabled individuals, as required by Florida Statutes § 394.459(4)(a); all in violation of 42 U.S.C. § 12182(b)(2)(A)(i) and (ii).

41.     Plaintiff visited the Premises from March 13, 2019 and March 16, 2019 and was denied full and safe equal access to the facilities, and therefore suffered an injury in fact.

42.     Plaintiff currently lives in close proximity from Defendant's establishment. *See Houston v. Marod*, 733 F.3d 1323, 1336 (11th Cir. 2013).[5]

43.     Plaintiff regularly travels to Wesley Chapel, Florida in which Defendant's establishment is located, and Plaintiff will continue to travel to the area in the near future.

44.     Plaintiff has an ongoing disability and may need to return and enjoy the goods and/or services at the Premises in the near future, and expects to have independent visits for personal reasons.  Plaintiff intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises.[6]

---

[5] "Plaintiff . . . lives in the next county. He does not live hundreds of miles away from the store with no particular reason to return." *Houston*, 733 F.3d at 1336.
[6] Thus, contrary to the holding in *Norkunas v. Park Rd. Shopping Ctr., Inc.*, by way of her dual motivation, Plaintiff has established more than a "naked assertion" of desire to return to defendant establishment." 777 F. Supp. 2d 998 (W.D.N.C. 2011).

45.     Defendant's failure and refusal to provide persons with disabilities with full and equal access to its facilities only serves to further the discrimination and injury endured by Plaintiff.

46.     Defendant holds itself out on its website[7] as being competent to accommodate disabled persons that require the use of a CPAP machine:

### Exclusionary Criteria

Individuals who cannot be treated at North Tampa Behavioral Health include the following:

- Patients requiring complex medical care (e.g. physical therapy, occupational therapy, wound care, catheters, dialysis, acute infections, uncontrolled seizures, or those who cannot eat or attend to activities of daily living independently, etc.)
- Patients with a primary diagnosis of Alzheimer's Disease or dementia with no other mental health symptoms presiding
- Patients with severe head trauma

At North Tampa Behavioral Health, it is the mission of our staff to ensure that every person who walks through our doors receives the comprehensive care that will not only be of most benefit to him or her, but that will set the stage for lasting healing and recovery.

If you or an important person in your life could benefit from the all-inclusive care that we offer here at North Tampa Behavioral Health, please do not hesitate to contact us today.

47.     Plaintiff is presently deterred from visiting Defendant's Premises, known to be out of compliance with the ADA, which constitutes an actual and present injury as surely as future visits to the same location constitute a threatened and imminent injury. "The likelihood of [plaintiff] suffering future injury thus is not contingent upon events that are speculative or beyond [her] control. Rather, the cause of the injury continues to exist, and the

---

[7] https://www.northtampabehavioralhealth.com/admissions/ (last visited November 5, 2019).

likelihood of [Plaintiff] encountering that cause in the future depends only on [Plaintiff's] own volition." *Houston*, 733 F.3d at 1337.[8]

48.     During Plaintiff's visit to the Premises an inspection was made confirming the ADA violations at the subject property. Findings based on the inspection of the subject property demonstrate, Defendant is in violation of 42 U.S.C. § 12182 *et seq*. and the 2010 American Disabilities Act Standards *et seq*., and is discriminating against Plaintiff as a result of, *inter alia*, the following specific violations found whose resolution is readily achievable, but are not limited to:

a.  Pursuant to 28 C.F.R. Part 36.201(a) "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." Rather than allowing Plaintiff to fully and equally participate in the goods and services offered at the facility, Defendant refused.  From March 13, 2019 to March 16, 2019, while Plaintiff was held on an involuntary basis and waiting for his March 21, 2019, Baker Act hearing, Defendant was on notice of his disability and need for a CPAP machine.  Defendant nevertheless discriminated against Plaintiff based on his disability and refused to provide Plaintiff with the device necessary to treat and manage his disability.  This unreasonable refusal directly and physically prevented Plaintiff from equal and full enjoyment of the goods and services offered at the facility.

---

[8] "Under the totality of the facts here, the threat of future injury to [plaintiff] is not merely 'conjectural' or 'hypothetical.' Instead it is 'real and immediate.'" *Houston*, 733 F.3d at 1337.

b.  Pursuant to 28 C.F.R. Part 36.202(b) "A public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." Defendant violated 28 C.F.R. Part 36.202(b) by not affording Plaintiff on the basis of his disability with the opportunity to participate in or benefit from Defendant's services, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. Plaintiff was offered bottled oxygen that is available to persons with emphysema and other respiratory conditions but was denied access to a CPAP machine for his sleep apnea.

c.  Pursuant to 28 C.F.R. Part 36.302(a) "A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." Defendant violated 28 C.F.R. Part 36.302(a) by not modifying its policies, practices, and procedures to allow the use of a CPAP machine by disabled persons, including Plaintiff, to fully enjoy Defendant's services, facilities, privileges, advantages, or accommodations.

d.  28 C.F.R. Part 36.206(c)(2) makes the following conduct unlawful:

> Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation.

Defendant violated 28 C.F.R. Part 36.206(c)(2) by interfering with Defendant's access to a CPAP machine as he sought to obtain or use the services, facilities, privileges, advantages, or accommodations of Defendant.

e. 28 C.F.R. Part 36.206(c)(3) makes the following conduct unlawful:

> Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights.

Defendant violated 28 C.F.R. Part 36.206(c)(3) by intimidating Plaintiff's spouse who was attempting to provide Defendant his CPAP machine, as Defendant is entitled to his CPAP machine under the ADA and 28 C.F.R. Part 36.

f. The subject property fails to meet the requirements for means of egress signs in violation of Sections 216.4, 216.4.1 and 216.4.3 of the new ADAAG. The law requires that doors at exit passageways, exit discharge, and exit stairways shall be identified by tactile signs complying with Sections 703.1, 703.2, and 703.5 of the new ADAAG.  The subject property does not have the required signage at each required location.



49.    The violations present at Defendant's Premises, create a hazard to Plaintiff's safety, both physical and mental.

50.    The violations present at Defendant's Premises infringe on Plaintiff's rights to travel free of discrimination. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's facility. By continuing to operate a place of public accommodation with discriminatory conditions, Defendant's contribute to the Plaintiffs' sense of isolation and segregation and deprives the Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. Plaintiff is deprived of the meaningful choice of freely visiting the same accommodations readily available to the general public and is deterred and discouraged from additional travel. By maintaining a public accommodation with violations, Defendant deprives the Plaintiff the equality of opportunity offered to the general public.

51.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 C.F.R. 36.505.

52.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter Defendant's Premises to make those facilities readily accessible and usable to Plaintiff, and all other persons with disabilities as defined by the ADA; or by closing the Premises until such time as the Defendant cures their violations of the ADA.

53.     Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

**WHEREFORE**, Plaintiff demands judgment against Defendant and respectfully requests the following injunctive and declaratory relief:

(a)     The Court declares that the Defendant is in violation of the ADA and order the building and the attendant business (hospital) therein to be closed to the public until such time that they are deemed by this Court to be accessible;

(b)     As such, in case of Defendant failing to file any paper or pleading as required by law and defaults, Plaintiff seeks an Order of this Court enjoining Defendant from further or continuing operations until such time as Defendant demonstrates that it is in compliance with the requirements of the ADA in its business operations;

(c)     The Court enter an Order requiring Defendant to alter the building and the attendant business hospital therein such that it is accessible to and usable by individuals with disabilities to the full extent required by the Title III of the ADA;

(d)     The Court enter an Order directing Defendant to evaluate and make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; to safeguard that no individual with a disability using an auxiliary aid or device

is excluded, denied services, segregated or otherwise treated differently than other individuals.

(e)     The Court award reasonable attorney's fees, costs and litigation expenses (including, but not limited to court costs and any expert fees) pursuant to 42 U.S.C. § 12205.

(f)     The Court awards such other and further relief as it deems necessary, just and proper.

## COUNT II – VIOLATION OF FCCPA, F.S § 394.459

Plaintiff realleges those allegations contained within paragraphs 1-53 above and incorporates them herein by this reference.

### *Violation of Florida Statute 394.459(4) – Quality of Treatment*

54.     Florida Statute § 394.459(4) sets forth the requirements for facilities regarding quality of treatment:

a.     Each patient shall receive services, including, for a patient placed under s. 394-4655, those services included in the court order which are suited to his or her needs, and which shall be administered skillfully, safely, and humanely with full respect for the patient's dignity and personal integrity.  Each patient shall receive such medical, vocational, social, educational, and rehabilitative service as his or her condition requires in order to live successfully in the community.  In order to achieve this goal, the department is directed to coordinate its mental health programs with all other programs of the department and other state agencies.

55.     Defendant's doctors and staff were on notice of his disability upon Plaintiff's involuntary admission to their facility on March 13, 2019.  Defendant's doctors and staff were also aware of his need for a CPAP machine to treat and manage his disability.  Defendant's doctors and staff were also aware that Plaintiff's Baker Act hearing was scheduled for March 21, 2019, a week after his involuntary admission.

56.     Thereafter, doctors and employees of Defendant repeatedly, unreasonably, and unlawfully refused over the course of his involuntary four-day stay to provide him with the crucial CPAP machine, in direct violation of Florida Statute § 394.459(4).

57.     At least one doctor noted in his chart that Plaintiff needed, and should be provided, a CPAP machine.  Further, this employee noted his spouse could bring his personal CPAP machine to the facility.  However, employees at the facility refused to accept the CPAP machine Plaintiff's spouse attempted to bring to the facility.  Communications about the matter included an employee instructing Plaintiff's spouse not to bother coming to the facility with the necessary and vital CPAP machine, because no one would see her.

58.     Defendant is vicariously liable for its employees' unlawful decision to refuse to provide Plaintiff with services suited to his needs and as his condition required, in violation of Florida Statute § 394.459(4), through a theory of *respondéat superior*.

59.     Defendant is vicariously liable for its doctors' and other contracted staff's actions in violation of Florida Statute § 394.459(4), because they were acting as apparent or actual agents of Defendant or were engaged in furthering nondelegable duties of Defendant.

60.     As a result of Defendant's violations of Plaintiff's rights under Florida Statute §§ 394.459(4), Plaintiff has suffered damages to include monetary damages, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, and other negative emotions, as well as suffering from unjustified and abusive restriction of his liberty.

**WHEREFORE**, Plaintiff demands judgment against Defendant and respectfully requests that the Court:

(a)     Award Plaintiff damages pursuant to Florida Statutes § 394.459(10);

(b)     Award Plaintiff costs of this action and prejudgment interest; and

(c)    Grant all other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury on all counts.

Respectfully submitted this 13th day of November, 2019.

Respectfully submitted by:

**THOELE|DRACH**

BY:     /s/ Justin Seth Drach
**Justin Seth Drach, Esq.**
Florida Bar No. 103016
Email: justindrach@drachlaw.com
**Amanda Marie Thoele, Esq.**
Florida Bar No. 75118
Email: amandathoele@drachlaw.com
7545 Centurion Parkway
Suite 303
Jacksonville, FL 32256
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Counsel for Plaintiff*